**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No.: 18-cv-21727-MGC

JESSICA LAGOS,

    Plaintiff,

v.

UNUM LIFE INSURNACE COMPANY
OF AMERICA,

    Defendant.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW ON UNUM'S PAID RECOVERY PLAN

Pursuant to Magistrate Judge Goodman's Post-Discovery Hearing Administrative Order [DE 31], Plaintiff, Jessica Lagos ("Ms. Lagos"), files Plaintiff's Memorandum of Law on Unum's Paid Recovery Plan:

### I.     Background

At the age of 32, Ms. Lagos was forced to stop working due to severe physical and cognitive impairment. Prior to becoming disabled, she practiced complex commercial litigation at Rumberger, Kirk, & Caldwell. [DE 1, Compl., at ¶ 25]. Severe illness stripped Ms. Lagos of her occupation, and she applied for long-term disability ("LTD") benefits on August 20, 2015 under an ERISA-governed disability insurance policy. [DE 1, Compl., at ¶ 42].

After reviewing Ms. Lagos' claim for benefits, Unum acknowledged her "inability to sustain even sedentary level work" and accepted liability. [DE 1, Compl., at ¶ 46-47]. Unum would pay her monthly LTD benefits from July 09, 2015 through February 14, 2017. Despite no change

in her medical condition or her treating physicians' support regarding her inability to practice law, Unum terminated her LTD benefits and thereafter denied her appeal.[1]

Ms. Lagos filed suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.* Through investigation, Plaintiff has obtained deposition testimonies and reports showing Unum has a practice of targeting disability claims for termination to recapture reserves.[2] Following impasse at mediation, Plaintiff propounded written discovery narrowly tailored to Unum's conflict of interest; namely, its "paid recovery plan."

As the insurer that both pays LTD benefits and administers claims, Unum operates under a conflict of interest.[3] During the discovery hearing held on January 18, 2019, Unum conceded it has a conflict and that discovery is permissible under the factors set forth in *Cerrito v. Liberty Life Assurance Company of Boston*, 209 F.R.D. 663 (M.D. Fla. 2012). Unum, nevertheless, objected to discovery pertaining to its own conflict and submitted a self-serving declaration in support thereof.

As this Court is aware, Plaintiff need not make a threshold showing to obtain discovery into Defendant's conflict under well-settled Florida district court ERISA decisions. Yet, that is exactly what Plaintiff has done here. Accordingly, Plaintiff should be allowed discovery into Unum's use of paid recoveries and what extent this plan influenced termination of her benefits.

**II.    Argument**

---

[1] In fact, medical information provided to UNUM around this time indicated Ms. Lagos's condition had deteriorated to a point where she was, at times, bedbound. [Ex. **A** - Physical Residual Functional Capacity Questionnaire completed by Bela Chheda, M.D., dated November 14, 2016.]
[2] This evidence can be found in public court filings.
[3] Where, as here, an administrator (*i.e.*, Unum) operates under a conflict of interest by both "conduct[ing] benefit determinations" and serving "as the insurance company paying claims out of its own assets," the court *must* consider this conflict as a factor in determining the lawfulness of the benefits determination. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2346, 2351 (U.S. 2008).

1. **Unum's Paid Recovery Plan**

Depositions of former Unum Assistant Vice Presidents ("AVP") Anthony Scuderi and Paul Peter describe Unum's paid recovery plan and the effect on reserves when benefits are terminated.[4] The plan entails setting monthly recovery goals that establish expectations for the number of claims to terminate and dollar amount to recover. The plan's performance is tracked through informal meetings and documents.

*What is a Paid Recovery?*

To Unum, the term "paid recovery" means the termination of an insured's benefits. Deposed twice on the topic, Mr. Scuderi explained that a "paid recovery is when a claim closes (*i.e.*, terminates), where benefits have been paid." [Ex. **B** – Scuderi 1 Dep., 28:24 – 29:14].

*What Impact Does a Paid Recovery Have on Reserves?*

When a paid recovery occurs, Unum is able to release the reserve set aside to pay the claim, thereby improving Unum's financial picture. Mr. Peter acknowledged that closed claims would result in releasing the reserves. [Ex. **D** – Peter Dep., 24:19 – 25:5]. The impact is not insignificant. According to Mr. Peter, his team of six Directors were expected to recover somewhere between "one million and two million dollars" per month, for a combined total of about 6-12 million dollars per month. [Id. at 26:19 - 27:13]. While it is true that one claim termination by itself may not meaningfully impact Unum's bottom-line, testimony of this former AVP makes clear Unum stands to recover millions every month through a plan that sets monthly recovery goals.

*How do Paid Recoveries Work?*

---

[4] A copy of all three deposition transcripts are attached hereto as follows:
- Ex. **B** – Deposition of Anthony Scuderi dated March 29, 2017
- Ex. **C** – Deposition of Anthony Scuderi dated February 13, 2018
- Ex. **D** – Deposition of Paul Peter dated November 29, 2016

Also attached, as Ex. **E**, is a table of contents flagging the pertinent portions of the Depositions.

Set by a financial unit within Unum, recovery expectations are shared with Unum's Claims Department. Mr. Peter explained in his deposition testimony that his VP orally communicated monthly recovery goals to him. [Id. at 25:6-11]. This included an aggregate number "for [his] organization as a whole, and numbers for each of the director teams underneath [him]." [Id. at 25:16-20]. This information would then be shared with employees involved with reviewing claims.

Both Mr. Scuderi and Mr. Peter stated they would disseminate expectations to their Directors. Specifically, Mr. Peter testified he "would tell them [Directors] at the beginning of each month what the – what the recovery plan or expectations were for their teams." [Id. at 22:12-16].

This is significant because UNUM's Directors supervise Disability Benefits Specialists ("DBS"), who are purportedly responsible for deciding claims. In reality, though, Directors are the ultimate decision-makers because they have to approve the DBS' benefits decision or, as Mr. Scuderi puts it, the "director had to validate the decision."[5] [Ex. **C** - Scuderi 2 Dep., 128:11-12].

Remarkably, reserve information was also shared. Mr. Scuderi stated he had access to reports listing individual claims identified as potential recoveries. [Ex. **B** – Scuderi 1 Dep., 53:16 – 22]. AVPs were also given reserve information for their blocks of claims. [Ex. **C**– Scuderi 2 Dep., 44:18 – 50:6; Ex. **D** - Peter Dep., 24:15 – 25:5]. Indeed, Mr. Scuderi testified to receiving a spreadsheet [attached as Ex. **F**] from his VP that contained a list of **names** and **reserve** amounts of claims he supervised. According to him, he would share reserve information with Directors. [Ex. **C** – Scuderi 2 Dep., 58:16-20].

There is no viable business reason for reserve information to permeate the claims department, particularly when there is an "expectation" to "recover" a set dollar figure each month.

---

[5] As a visual aid, UNUM's chain of command is as follows: Vice Presidents → Assistant Vice Presidents → Directors (of disability claims) → Disability Benefits Specialists.

Decision-makers (Directors) and their supervisors (AVPs) should be "walled-off" from the company's finances, goals, and especially reserve information, to ensure benefit determinations are based entirely on merit, not metrics.

*Paid Recoveries are Monitored*

According to the depositions of both AVPs, recovery goals are monitored and tracked through "off-the-record" meetings and internal reports, which are never found in UNUM's claim file. Specifically, Mr. Scuderi testified that weekly conversations were held with his AVP about his team's performance and "where [he] stood in relation to what was forecasted." [Ex. **B** – Scuderi 1 Dep., 56:17-19]. AVPs kept an eye on their Directors performance as well by regularly discussing progress towards recovery goals. [Ex. **D** – Peter Dep., 30:23 – 33:23]. One document utilized for this purpose is Unum's "Weekly Tracking Reports," which, according to Mr. Scuderi tracked "actual recoveries in conjunction to the amount of plan recoveries." [Ex. **B** – Scuderi 1 Dep., 112:7 – 119:14, at 118:8-10].[6]

*Are Directors and AVPs Assessed and Compensated On Meeting Recovery Expectations?*

Absolutely. Mr. Peter testified that his effectiveness as an AVP was evaluated in part on whether his team was "on plan, below plan, or above plan with respect to claim forecasting." [Ex. **D** – Peter Dep., 51: 17-23]. Mr. Peter further testified he would discuss with his Directors the importance of meeting plan expectations:

> **Q:** But it was important relevant information [recovery expectations] for them to have?
> **A:** It was part of something that—one of the things they were held accountable for.
> **Q:** In what way were they held accountable for it?
> **A:** **Well . . . how a director performed in relation to their plan expectation was one of   the factors they were evaluated against.**

---

[6] Plaintiff possesses a copy of Unum's "Weekly Tracking Report" attached as Exhibit **G**. Plaintiff also possesses a copy of Unum's "Director's Scorecard" attached as Exhibit **H**.

[Id. 28:19 – 29:7](emphasis in bold).

UNUM also evaluated and incentivized AVPs based on how they and their team of Directors performed with respect to monthly plan expectations. Mr. Peter explained:

**A**: You know, I was evaluated based on the collective performance of the teams that reported to me, and how those teams did with respect to. . . ho they did relative to the monthly plan expectations were all factors that, you know, I believe played a part in how my performance was assessed.
**Q**: Were all of those things also factors in whether and how much incentive pay you or your directors would be eligible for?
**A**: You know, again, I just listed several factors how we were evaluated, and how our performance was evaluated did impact, you know, our performance rating and our incentive compensation.

[Id. 52:19 – 53:13]

As demonstrated above, Plaintiff has made a showing that Unum's recovery plan may improperly influencing claims handling.[7] A conflict of interest is an important factor in determining the lawfulness of the benefits determination. *Glenn*, 128 S. Ct. at 2351. The Supreme Court explained an insurer's conflict of interest is less concerning where an administrator "has taken active steps to reduce potential bias and to promote accuracy, for example, by *walling* off claims administrators from those interested in firm finances." [Id.]. No such "wall" exists between Unum's finance department and its claims department. To the contrary, Unum has established an information superhighway with financial information flowing to AVPs and down to Directors. Setting target goals for recoveries along with orally conveying reserve amounts to decision-makers, who are evaluated and compensated on meeting forecasted goals, is the exact opposite of what *Glenn* mandated.

---

[7] This Court found in *Johnston v. Aetna* that, "[t]o consider the structural conflict, a court may need to permit a plaintiff to obtain discovery beyond the written administrative record … discovery about the apparent structural conflict and its possible impact on the decision making process, including procedural irregularities should be permitted." *Johnston v. Aetna Life Insurance Company,* No: 17-20996, 2017 WL 4654431 (S.D. Fla. October 16, 2017)

Mingling the company's finances with claims handling conflicts with the duties of an ERISA fiduciary. ERISA's fiduciary goals, expressed in ERISA S 404(a)(1), 19 U.S.C. § 1104(a)(1), require fiduciaries (like UNUM) to act exclusively in the interest of the plan's participant and their beneficiaries. UNUM is held to a "higher than marketplace" standard. [Id. at 2350]. Claims should be evaluated solely on their merits, in the best interests of the beneficiaries, and without any pressure or incentive to meet financial objectives. Unfortunately, UNUM's fiduciary duties has taken a back seat to financial goals.

### 2. Unum's History of Bad Claims Practices

Old habits die hard. Unum may plead innocence here, but a history of improper claims handling does not help. In *Glenn,* the Supreme Court highlighted a law review article "detailing" Unum's history of biased claims administering, stating the conflict of interest "should prove more important (perhaps of great importance)" where such a history suggest a higher likelihood it affected the events decision. (Id. at 2351).[8]

In *Merrick v. Paul Revere Life Ins. Co.*, the court found Unum "set targets and goals for claim termination to obtain financial gain and without respect to claim merit." *Merrick v. Paul Revere Life Ins. Co.*, 594 F. Supp 2d 1168, 1171 (D. Nev. 2008). An email produced in *Merrick* exemplify why Unum's paid recovery plan and the internal pressure to meet these goals are problematic:

Folks:

As luck would have it, we are running out of it....

---

[8] The law review article detailed Unum's "program of bad faith benefit denials" in disability claims. Langbein, *Trust Law as Regulatory Law*, 101 Nw. U.L.Rev. 1315, 1323–1324 (2007). Following a multi-state investigation into Unum's unfair claims practices, in 2005, the company entered into a regulatory settlement agreement and agreed to pay significant fines.

> We are projected to have 1,800,000.00 in recoveries this month but are coming up short at 1,772,000.00 ... this includes the following that I would like updates on today:
> * * *
> **Are there any other claims that are possible recoveries this week? ? ? ?**
> (emphasis in original)

### 3. Unum's Claim that it has no Paid Recoveries Plan for ERISA/LTD Claims

Unum has a credibility problem. During the discovery hearing, Unum argued that it does not maintain or use recovery data in ERISA/LTD group disability claims. However, Unum had several opportunities to outright deny the existence of a paid recovery for ERISA/LTD claims. It did not.

First, Unum did not deny the existence of the plan in its initial responses to Plaintiff's written discovery. Instead, Unum generally objected and stated no "paid recoveries were considered, reviewed or used" in connection with Ms. Lagos' claim. If Unum truly had no documents, it could have simply stated so, just as it did in its response to Request for Production No. 19.[9]

Second, in *Gray v. Unum Life Ins. Co. of America*, an ERISA benefits action that also involved the termination of LTD benefits, Unum similarly did not deny existence of the plan. Rather, Unum responded to a request to produce Weekly Tracking Reports by acknowledging it has "potentially responsive documents," but objected for the same reasons *initially* offered here, namely that "paid recoveries were considered, reviewed or used." [Ex. **K** - Joint Stip. in Support of Plaintiff's Mot. to Compel in *Gray*, at 12]. Like Lagos, Gray's claim was assigned to a unit

---

[9] Responding to a request to produce any "change in status reports", Unum stated "it has no responsive documents." [Ex. **I** – Defendant's Response Plaintiff's Request for Production 19]. Unum also admitted that the termination of Ms. Lagos' claim was deemed a "paid recovery." [Ex. **J** – Defendant's Response to Plaintiff's Request for Admission 40].

responsible for reviewing ERISA/LTD claims.[10] Accordingly, Unum cannot be trusted and should be ordered to respond to the discovery sought.

Third, here and in *Gray,* Unum filed virtually identical, self-serving declarations by the Directors that oversaw each claim.[11] Though artfully worded, what's important is *what is not said* in both declarations. Unum's Directors do not deny that recovery expectations were set for the claims department or the existence of the plan in ERISA/LTD claims. Nor do they deny that they are "assessed" based on meeting their recovery goals. Instead, the Directors assert they are not evaluated based on "claim outcomes." [Ex. **L** – Butler Decleration, 3:12]. Again, Unum had the opportunity to outright state that paid recoveries are not utilized in ERISA/LTD claims in the declarations. They did not.

Frankly, Unum's position defies logic. Unum claims that paid recoveries is done on individual disability income ("IDI") claims, not ERISA/LTD claims. According to Unum, then, this plan pertains only to the disability block of business governed by state insurance laws where discovery is more liberal (and thus the likelihood of being caught is more likely) and where punitive damages are available in many states. Conversely, no similar plan exists for ERISA/LTD claims, despite the defense bar's view that discovery is limited and no extra-contractual damages are allowed.

As the Court is aware, the court in *Gray* granted the plaintiff's discovery requests, finding "request for production regarding alleged financial incentives Defendant Unum had to terminate disability claims relevant to determining whether Defendant Unum's decision to terminate

---

[10] The *Gray* case settled in 2018 *after* the Court ordered production of the same information and documents sought here.
[11] A copy the declarations are attached hereto as follows:
- Ex. **L** – Declaration of Amy Butler filed in the Jessica Lagos matter
- Ex. **M** – Declaration of Jessica Turlo filed in the *Gray* matter

9

Plaintiff's plan for reasons other than the merits." [Ex. **N** - *Gray v. Unum Life Ins. Co. of America, et al.*, No: 17-1778-JGB-KKx, 2018 WL 4566850 (C.D. Cal. Sep. 21, 2018)]. This Court should do the same.

### III.　CONCLUSION

For the reasons discussed above, Ms. Lagos respectfully requests the Court allow discovery into Unum's paid recovery plan.

***Respectfully submitted this 1st day of February, 2019,***

>  */s/ Edward Philip Dabdoub*
> Edward Philip Dabdoub (FBN 45685)
> eddie@longtermdisability.net
> Kevin Schaefer (FBN 123688)
> kevin@longtermdisability.net
> DABDOUB LAW FIRM, P.A.
> 1600 Ponce de Leon Blvd, Suite 1205
> Coral Gables, Florida 33134
> Tel: (305) 754-2000
> Fax: (305) 754-2007
> *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 01, 2019, I electronically filed the foregoing Response with the Clerk of Court by using the CM/ECF system, which will, in turn, send a notice of electronic filing to Defendant's attorney:

Kristina B. Pett (FBN 0973688)
Kristina.pett@emhllp.com
Danielle Shure (FBM 118911)
danielle.shure@mhllp.com
MCDOWELL HETHERINGTON LLP
2101 NW Corporate Blvd., Suite 316
Boca Raton, Florida 33431
Tel: (561) 994-4311
Fax: (561) 982-8985
*Attorneys for Defendant*

                                         */s/ Edward P. Dabdoub*
                                         Edward P. Dabdoub